*41 Opinion of
the Court.
THE bill was exhibited by Campbell and wife, late Mary Kennedy, widow of John Kennedy, deceased, to have a conveyance of a certain tract of 1,400 acres of land, called the Locust Bend, claimed under agreement between the said widow and John and Andrew Kennedy. The circuit court of Madison decreed a conveyance with general warranty, to be made on or before a given day, and that the complainants should, if requested, on or before the said day, execute any other or further instrument of writing, which the defendants to the suit might require, to divest the complainant, Mary, of any claim or interest which she may have to any of the estate of John Kennedy, deceased. From this decree the defendants appealed.
It is agreed by the pleadings, that John Kennedy, the late husband of the complainant, Mary, died possessed of a considerable personal estate, and having claims to a considerable quantity of land in Kentucky. He had published his will and testament, in the year 1775, by which he bequeathed and devised all his estate to his brothers, Joseph, Andrew and David, except the sum *42 of ten shillings to his brother Tom. Subsequent to the date of this will and testament, the testator married, and died about the first of the year 1781, without issue, or having had issue. The widow set up her claim for her part of her deceased husband’s estate, which produced the agreement in controversy, between her, of the one part, and the father of her deceased husband, and her husband’s brother Andrew, one of the devisees, of the other.
A person covenanting to make a sure and true right of fee-simple is bound to execute a deed with general warranty.
The agreement recited, that “ as John Kennedy, deceased, in his lifetime, March the 6th, 1775, made and executed a will, or bequeathment to his brothers, of all his estate, and it is his above named wife Mary’s desire to establish said bequeathments, in the manner said John Kennedy desires, agreeable to the request the above named John and Andrew Kennedy; for which the said John and Andrew agree to give the said Mary a certain horse, a certain bay mare, six cows, two kettles, and other household furniture, now in said Mary's possession, and 100 bushels of corn; for all which, the said Mary does agree to confirm the above mentioned will or testament, agreeable to law: And further, the above John and Andrew Kennedy do promise and agree to make or cause to he made a sure and true right of fee simple, according to the laws of Virginia, for 1,400 acres of land, lying on Silver creek, known by the name of the Locust Bend, to the above named Mary.”
The bill and amendments charge, that said Mary did acknowledge the said agreement in court; that it was admitted to record; that administration was granted to the defendants; that, for the relinquishment of her right of dower in her husband’s estate, the agreement was made; that a republication was made of said will and testament, in 1780; that the said will was offered to the county court of Lincoln for record; that the heir at law, Thomas Kennedy, opposed proof to the republication; that such proof was rejected by the county court, but that the opinion in that respect was reversed by the appellate court; that since, the devisees and heir at law have compromised and the said devisees have agreed with said Thomas Kennedy, the heir at law, to receive an equivalent for their portions devised, whereby the re-publication has not been since offered to the court; that the complainant has always been *43 willing to do all on her part to be done, and has done all she expected or was informed she was bound to do, by acknowledging the agreement in open court; but that the legatees have hindered the will from being recorded, under that pretence to withhold the title of the 1,400 acres of land agreed to be given in lieu of the said Mary’s right of dower; and that they have receive their several proportions under the will, or an equivalent therefor, whilst they affect to dispute about the will, &c.
The answer of the defendant, John Kennedy, in whom the title to the 1,400 acres is vested, (being his settlement and pre-emption,) admits the material allegations of the bill; and the answer to the amended bill admits that the compromise between the legatees and heir at law did take place. The defence in his first answer is, that the widow, refusing to take upon herself the administration of her husband’s estate, claimed one half thereof, both real and personal, as her absolute right, and that such was the impression of almost all of those with whom he, the said John, consulted; and, moreover, that if the widow should set aside the will, and take herself to her right of dower, then the decedent’s eldest brother, Thomas, who had only a legacy of ten shillings, would come in for the residue, to the exclusion of his younger brothers; that under this impression the agreement was entered into, as stated in the bill, by which she was to relinquish all right and claim in the estate of the said deceased, and confirm the said will, agreeable to law, and agreeable to the desire of the said deceased; that since, he has been informed that the widow could only have had an estate for term other life, in so much of the real estate as the husband had acquired title to in his lifetime; but that, as he had not completed the title to his claims, it was doubtful whether she had any claim to the real estate; that as the will was made previous to the acquisition of the testator’s claim to the real estate, no right passed therein, by the will, to the devisees; and therefore, that it was, and still is out of the power of said Mary fully to comply with the spirit and intention of the said agreement; that Thomas Kennedy has set up a claim to all the lands of the said deceased, as heir at law, &c. and therefore, that the consideration has failed.
*44 The answer to the last amended bill admits, that John was a witness to a re-publication of the will, the contest about the re-publication and reversal of the opinion of the county court; that as the respondent was the only witness that could be had, as to the republication, and as he was interested, a compromise was advised by their attorney, and finally effected with the heir at law. He does not admit that the said Mary was entitled to dower in the lands of her husband, as he had never obtained a grant; that he considered the establishment of the will as a condition precedent to the widow’s claim for a conveyance of the 1,400 acres. He admits he might have offered to transfer the plat and certificate of survey of the Locust Bend; but that he was under an impression that the will would be established by the said Mary, as he at that time knew nothing as to the effect of the proof as to re-publication, neither did he then know that the will, made before the said Kennedy acquired land, would not transfer said land; that, as no legal testimony to establish the re-publication could be procured, the defendant therefore conceives, that, as the consideration has failed, he cannot be bound to convey.
The only defence made by the defendant, Andrew, is, that he was an infant at the time of the agreement; but this is not supported by the evidence. The decree against him is only for costs, he having no interest in the 1,400 acres.
The agreement is silent as to the re-publication of the will; and whatever ambiguity may be, as to what was intended by the confirmation of the will, we cannot put such a construction upon the agreement, as to bind the widow to furnish proof of a re-publication, when the answer admits that the effect of re-publication was unknown at the time; and also, that it was not in contemplation that the after-acquired lands would not pass. But if we resort to parol poof, for an explanation of this ambiguity, appearing on the face of the agreement, as to what was understood by the widow confirming the will, it will amply appear, that nothing more was contemplated, than that she should relinquish her claim upon her husband’s estate, and instead of be taking herself to the law for her part, whatever it might be, that she should content herself with the equivalent contracted for. In fact, that she was made clearly to un *45 derstand, that when she acknowledged, in court, the agreement, as she did on the next day, her part was performed; that she had covenanted that the will was a good one; that the re-publication was made, and that it was effectual in law; and moreover, that she had contracted with one of the subscribing witnesses, to prove by her exertions the publication or re-publication, would be an unreasonable and far-fetched exposition. Besides, her claim did not accrue under the will. She had no interest in the establishment of it. It was either valid, or invalid by the laws of the land. If invalid, it would be a harsh construction, to say that the widow had undertaken to make an illegal and invalid testament valid, or that, by accepting a compensation for her legal claim upon the estate, she had covenanted to secure the whole to the devisees. The tenor of both the answers shows that the widow’s part was the subject of the treaty.
It is alleged that she was not entitled to any part of the real estate, because her husband was only a claimant by entry, not carried into grant, and her interest in the real estate could have been but a third, instead of a half, and but for life, instead of absolutely. If it had appeared that the widow had asserted a claim to one half of the estate, real and personal, to her and her heirs, and that the parties had contracted under the mistaken opinion that such was her right, some doubt might arise, whether the agreement ought not to be set aside. But it appears that the widow only expressed a desire to have her legal right; that she did not assert it to be more or less; that the agreement was pressed upon her by the appellants, from an anxiety on their part to confirm or establish the claim of the sons of the defendant, John, as devisees of his deceased son, and to the exclusion of the heir at law; a subject in which the widow had no interest or connexion, her claim being precisely the same, whether the will was established or not, and equally interfering with the devisees or the heir at law, in the one or the other event. The private and separate views, or fears, or speculative opinions of the appellants, which the widow had no interest in, and had not, by any part of her conduct, excited or illegally superinduced, ought not to be attached to her contract, to her prejudice. The appellants have compromised with the heir at law.
Note.—It has been said, that this case is overruled by the case of Bullitt vs. Ralston and Sebastian, 3 Bibb 261; but in that case the Bullitts did claim more than their right, viz. the amount of the bills, when, from the negligence of the holder, they were entitled to nothing; and under the apprehension of that claim, was the compromise made. Here, the widow claimed her dower, and nothing more, and to the whole of that she was entitled.
The charge in the bill, that the legatees, whilst they have received their parts, affect to dispute about the will, for the purpose of withholding the 1,400 acres under that pretence, is not denied. This was an allegation so positive and material, as that the silence of the answer on the subject cannot be excused as a mere oversight. Indeed, the exhibits afford strong inducements to believe the charge is true in every part. Whether the widow was entitled to dower of the real estate of her deceased husband, or not, her claim to the Locust Bend remains equally fair. She did not seek the compromise of her legal claim upon the estate; the defendants, and John in particular, urged it upon her. She did not engage to sell any particular interest in the estate. She expressly declared she was ignorant of the extent and value of the claim given her by law. She entered into an agreement to relinquish it, and let the devise of her husband take its course, uninterrupted by her. She has abandoned her claim upon her husband’s estate, and since the year 1781 has been paralyzed by the agreement. It would now be most unreasonable and unjust, to send her back to contest her claim to dower in the real estate, with the devisees and the heir at law, who have compromised, and with the defendant, John, the administrator, for her part of the personal estate. There is no evidence nor allegation that the widow made any suggestion of falsehood, or was guilty of a suppression of the truth, about her claim. She has been the innocent, passive party in the agreement, and is justly entitled to the benefit of it.
Upon the subject of the warranty decreed by the court, the cases of Steele vs. Mitchell, Pr. Dec. p. 47, and Bard vs. Grundy's devisees, p. 195, are in point.
It seems to the court, that there is no error in the decree of the circuit court, as complained of by the appellants.